**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUGENE DEWS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-2744** |
| | : | |
| **MR. JOSEPH TERRA, MS. ANN LEWIS GEOVONTI, MS. VIVIAN CROSSMAN, MS. BRITANY HUNER, MEDICAL DEPARTMENT** | : | |

# MEMORANDUM

**KEARNEY, J.** **November 17, 2026**

An incarcerated man alleges nurses at his correctional facility denied him medical care in partial retaliation for his repeatedly suing the Department of Corrections. He also alleges their supervisors knowingly denied him relief upon reviewing his grievances. The nurses and their supervisors do not today challenge whether he sufficiently pleads facts allowing us to plausibly infer a basis for a cruel and unusual punishment or retaliation claim. But they ask us to dismiss his separate due process claims, claims against the supervisors, and claims against the Department of Corrections. We agree with the Commonwealth actors in part. The Department of Corrections is not a person subject to suit under civil rights law. And the incarcerated man may not proceed on a separate due process claim when his allegations are more specifically covered by the cruel and unusual punishment prohibitions under the Eighth Amendment. But the incarcerated man presently states a claim for personal involvement of the two supervising officers who allegedly knew and denied one or more of his grievances concerning the nurses' conduct.

## I. Alleged pro se facts

The Commonwealth detained diabetic Eugene G. Dews at SCI Phoenix. He requires insulin injections twice daily.[1] Mr. Dews reached a settlement agreement at an undefined time in 2015

with the Pennsylvania Department of Corrections stipulating he would receive his nightly insulin shot at 6:30pm.[2] Nurses Ann Lewis and Vivian Crossman administered his insulin treatment inside a medical triage unit or an exam room until February 18, 2024.[3] Then one night (presumably February 18, 2024) Mr. Dews asked Nurse Crossman if she could take his blood pressure.[4] Nurse Crossman said she would have to charge Mr. Dews.[5] Nurse Lewis remarked, "oh, Mr. Dews' bank account could handle that after all the lawsuits he has filed against the medical department."[6]

Nurse Lewis and Nurse Crossman then denied Mr. Dews his insulin or relegated his treatments to the Facility's unsanitary hallway many times.[7] Mr. Dews filed several internal grievances challenging Nurse Lewis's and Nurse Crossman's conduct to their supervisors, Correctional Health Care Administrator Britany Huner and Facility Manager Joseph Terra.[8] Care Administrator Huner and Facility Manager Terra denied Mr. Dews's grievances and did not curb Nurse Lewis's and Nurse Crossman's alleged conduct.[9]

## II. Analysis

Mr. Dews sues for damages from Nurse Lewis, Nurse Crossman, and Care Administrator Huner for First Amendment retaliation, Eighth Amendment cruel and unusual punishment, and Fourteenth Amendment due process.[10] Mr. Dews also sues Facility Manager Terra and the Department of Corrections under the Eighth and Fourteenth Amendments.[11] The Commonwealth actors move to dismiss Mr. Dews's Fourteenth Amendment due process claims, his supervisory liability claims against Care Administrator Huner and Facility Manager Terra, and all claims against the Department of Corrections.[12]

### A. We dismiss Mr. Dews's Fourteenth Amendment due process claims with prejudice as duplicative of his Eighth Amendment claims.

Mr. Dews alleges the Commonwealth actors showed deliberate indifference to his need for insulin treatments regulating his diabetes.[13] The Commonwealth actors concede he pleads Eighth

Amendment cruel and unusual punishment claims but argue Mr. Dews's Eighth Amendment claims subsume his Fourteenth Amendment due process claims.[14] Mr. Dews responds by reciting our motion to dismiss standards but does not address the Commonwealth actors' argument.[15]

Our Court of Appeals instructs "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[16] The Supreme Court identifies "deliberate indifference to serious medical needs of prisoners" as cruel and unusual punishment under the Eighth Amendment.[17] Our Court of Appeals instructs the Eighth Amendment serves as the primary source of substantive protection where an incarcerated person alleges government officials were deliberately indifferent to the person's medical condition and finds accompanying Fourteenth Amendment claims duplicative.[18]

We agree with the Commonwealth actors. Mr. Dews can (and does) seek relief under the Eighth Amendment for his deliberate indifference claim. The Commonwealth actors do not today contest the adequacy of his pleaded facts allowing us to plausibly infer an Eighth Amendment claim. His Fourteenth Amendment due process claims duplicate his Eighth Amendment claims. We must dismiss his due process claim as a matter of law. We dismiss his Fourteenth Amendment claims against Nurse Lewis, Nurse Crossman, and Care Administrator Huner with prejudice.

**B. Mr. Dews adequately pleads facts allowing us to plausibly infer supervisory liability.**

The Commonwealth actors argue Mr. Dews sued Care Administrator Huner and Facility Manager Terra in conclusory fashion citing their supervisory titles.[19] They contend Mr. Dews does not identify how Care Administrator Huner or Facility Manager Terra knew of and acquiesced in a subordinate nurse's unconstitutional conduct.[20] Mr. Dews responds Care Administrator Huner

and Facility Manager Terra both knew of and acquiesced in the nurses' violation of his Eighth Amendment rights.[21]

An incarcerated person bringing a civil rights claim must identify a state actor's "personal involvement in the alleged wrongs."[22] An incarcerated person's allegations should describe the state actor's "participation in or actual knowledge of and acquiescence in the wrongful conduct."[23] An incarcerated person asserting a supervisory liability civil rights claim must "identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury."[24]

Mr. Dews alleges he provided seven of his grievances against Nurse Crossman and Nurse Lewis to Care Administrator Huner.[25] He recounts the individual grievances and their circumstances.[26] Mr. Dews alleges Care Administrator Huner dismissed grievance #1082890 responding, "[y]our statements are hearsay. Your grievance is denied."[27] Mr. Dews further alleges Care Administrator Huner also denied grievances #1086196, #1086199, #1088076, and #1088085 regarding Nurse Crossman's withholding of proper medical care from Mr. Dews.[28] Mr. Dews further alleges Care Administrator Huner denied these grievances even though the facility manager and supervising nurses expressed concerns over the treatment of Mr. Dews.[29] He also alleges Care Administrator Huner failed to review security footage establishing all other incarcerated persons received medical treatment in the triage unit while Nurse Crossman and Nurse Lewis relegated Mr. Dews's treatment to the hallway.[30]

Mr. Dews alleges Facility Manager Terra reviewed his grievances as part of a second level appeal process.[31] Facility Manager Terra acknowledged the legitimacy of Mr. Dews' grievance #1082880 on May 6, 2024, stating, "it is concerning the nurse Ms. Crossman told you to do your insulin in the hallway despite being told to come in by nurse Ms. Susan."[32] But on the following

day Facility Manager Terra approved the denial of Mr. Dews' grievance #1082099 stating, "[t]here is no evidence to support your claim of violations, retaliation, harassment, etc."[33] He also upheld the grievance officers' denial of Mr. Dews' grievances #1078472, #1082061, #1082099, #1084362, #1085423, and #1086199.[34]

Mr. Dews adequately pleads facts allowing us to plausibly infer Care Administrator Huner's and Facility Manager Terra's actual knowledge of and acquiescence in Nurse Lewis's and Nurse Crossman's alleged wrongful conduct. We do not today find either supervisor violated a constitutional right. We limit our finding to the pleaded facts. We deny the Commonwealth actors' Motion to dismiss the supervisory claims against Care Administrator Huner and Facility Manager Terra.

**C. We dismiss Mr. Dews's civil rights claims against the Department of Corrections with prejudice.**

The Commonwealth actors argue the Department of Corrections is not a "person" against whom Mr. Dews can seek damages under section 1983.[35] They argue in the alternative the Department of Corrections enjoys immunity from suit under the Eleventh Amendment.[36] Mr. Dews does not respond to the Commonwealth actors' arguments.

Congress provides in section 1983 "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…"[37] The Supreme Court instructs "a State is not a person within the meaning of [section] 1983."[38] And our Court of Appeals has specifically instructed Pennsylvania's Department of Corrections is not a person and

subject to suit under section 1983.[39] Our Court of Appeals affirms dismissal of medication-related civil rights claims by incarcerated persons against a prison medical department.[40]

The Eleventh Amendment separately bars suits against States in federal court absent waiver or valid abrogation.[41] Congress has not abrogated this immunity through section 1983.[42] Our Court of Appeals recognizes the Department of Corrections is "a part of the executive department of the Commonwealth" and "shares in the Commonwealth's Eleventh Amendment immunity."[43]

We are guided by our Court of Appeals and agree with the Commonwealth actors. The Department of Corrections is not a person under section 1983 and is immune from suit under the Eleventh Amendment. We dismiss Mr. Dews's civil rights claims against the Department of Corrections with prejudice.

## III. Conclusion

We grant in part the Commonwealth actors' Motion to dismiss. We dismiss Mr. Dews's claims under the Fourteenth Amendment and against the Department of Corrections with prejudice. Mr. Dews may proceed into discovery on his claims against the supervisors as he has sufficiently pleaded enough facts to allow us to plausibly infer a claim for their personal involvement subject to discovery.

---

[1] ECF 2 ¶ 14.

[2] *Id.* ¶ 17.

[3] *Id.* ¶¶ 17, 19. Mr. Dews alleges the settlement agreement stipulating to his nightly 6:30pm shot occurred "[a]round 2015" but also alleges Nurse Lewis and Nurse Crossman administered his insulin in the medical triage room or exam rooms "for over 15 years." *Id.* ¶ 19.

[4] *Id.* ¶ 20.

---

[5] *Id.*

[6] *Id.*

[7] *Id.* Mr. Dews details several incidents between February 18, 2024 and August 11, 2024 where Nurse Lewis and Nurse Crossman denied his insulin or forced him to receive treatment in unsanitary locations rather than in triage and exam rooms.

[8] *Id.* ¶¶ 326–69.

[9] *Id.*

[10] ECF 2.

[11] *Id.*

[12] ECF 22 at 2–11. We collectively refer to Nurse Ann Lewis, Nurse Vivian Crossman, Care Administrator Britany Huner, Facility Manager Joseph Terra, and the Department of Corrections as the "Commonwealth actors".

[13] ECF 2 ¶ 23.

[14] ECF 22 at 6–8.

[15] ECF 29 at 4–5.

[16] *Washington v. Gilmore*, No. 21-2876, 2022 WL 1073873, at *3 (3d Cir. Apr. 11, 2022) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).

[17] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[18] *Turner v. Wetzel*, No. 21-2879, 2022 WL 3572693, at *4 n.7 (3d Cir. Aug. 19, 2022); *see also Quarles v. Bontempo*, No. 23-1601, 2024 WL 517871, at *6 n.5 (E.D. Pa. Feb. 9, 2024).

[19] ECF 22 at 10.

[20] *Id.*

[21] ECF 29 at 6.

[22] *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)).

[23] *Id.*

[24] *Id.* at 227.

[25] ECF 2 ¶ 335.

---

[26] *Id.* ¶¶ 336–48.

[27] *Id.* ¶¶ 337–38.

[28] *Id.* ¶¶ 341–48.

[29] *Id.* ¶¶ 352–53.

[30] *Id.* ¶ 339.

[31] *Id.* ¶ 357.

[32] *Id.* ¶ 362.

[33] *Id.*

[34] *Id.* ¶¶ 359–65.

[35] ECF 22 at 10–11.

[36] *Id.* at 11.

[37] 42 U.S.C § 1983.

[38] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

[39] *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012). An incarcerated person sued the Commonwealth's Department of Corrections and the State Correctional Institution at Albion under section 1983 for improperly deducting court costs and fees from his prison account over a period of years. Our Court of Appeals affirmed dismissal of the suit because a state agency and the prison the agency administers are not "persons" and subject to suit under section 1983.

[40] *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (per curiam).

[41] *Will*, 491 U.S. at 66–67 (1989).

[42] *Id.*

[43] *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).